1. October 28, 2007

2. Lou Ramondetta
3. 2335 Stewart Ave
4. Walnut Creek, CA 94596
5. 925-989-2525
6. 925-945-1655 fax

**FILED**

NOV 0 5 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7. United States District Court
8. Northern District of California
9. 450 Golden Gate Avenue
10. San Francisco, CA 94102
11. Attn: The Hon. Magistrate Judge Chen

12. RE: C-07-03329 EMC
13. Ramondetta v Philips Electronics Limited, Philips Medical Systems North America, Philips Electronics North America, Corporation, Iain Burns, Steve Hurwitz, Philips Medical Systems (Cleveland) Inc, Philips Medical Financial Services Inc.

14. **APPLICATION FOR ASSISTED SETTLEMENT CONFERENCE**

15. Hearing date and Time: September 12, 2007 at 10:30 a.m.

16. The biggest area I need initial assisted support on for my case is proving this California court has Jurisdiction over the defendant since Philips Electronics Limited, Iain Burns and Steve Hurwitz are based in Canada and Philips Electronics Limited, Philips Medical Systems (Cleveland) and Philips Medical Financial Services. My rational is below:

17. Royal Dutch Philips is a global Consumer, Medical and Industrial conglomerate with multiple affiliated divisions. Philips Electronics Limited (PEL) is a Canadian business entity doing business mostly in Canada and receiving support functions from the other listed Defendants. Philips Electronics North America Corporation (PENAC) is based out of New York supporting the Medical business in North America. Philips Medical Systems (Cleveland), Inc is a manufacturer of CT and X-Ray equipment in Ohio supporting North America including Canada. Philips Medical Financial Services, Inc provides equipment financing support and is headquartered in Bothell Washington supporting North America and Canada. Iain burns was the President for the Philips Electronics Limited. He initially did not have direct responsibility for the Medical business in Canada but I believe his position changed just prior to my departure to be the CEO for Canada including the Medical business. Steve Hurwitz was the VP for Human Resources for Canada supporting Medical employees. Philips Nuclear Medicine, Inc is not identified as a defendant but is a Milpitas California based company supporting North America and Canada with Nuclear Medicine equipment, training, support and service. Philips Medical Systems North America is headquartered out of Bothell Washington doing business in the US and Canada and is affiliated with Philips Electronics North America. The above companies and individuals are all affiliated and support each other.

18. As an employee of Philips, I was hired by Philips Medical Systems North America that was part of Philips Electronics North America. I supported all the defendant businesses selling their products in Canada and working with their headquarter teams in the United States and California. Philips Electronics Limited was affiliated and supported by the other defendants to provide products and support.

19. This is the right jurisdiction for this lawsuit since this is the district that the Defendants did a substantial portion of the events and interactions that gave rise to this lawsuit. The defendants have global operations including facilities and resources in this area. The affiliated companies directly supported Philips Electronics Limited by supplying services. In the case of Philips Medical Systems (Cleveland), they supplied CT and X-Ray products to Philips Electronics Limited. In the case of Philips Medical Financial Services Inc, they supplied leasing and purchase financing for Philips Electronics Limited.

20. Philips Electronics Limited did business in California. Their orders for Nuclear Medicine Equipment were placed with the facility in 540 Alder Dr, Milpitas California,`1800-538-8531  Shabniz Chatur was one of the Canadian employees who managed the Order Fulfillment team placing orders from Canada for Nuclear Medicine equipment in Milpitas California. The Milpitas facility shipped product to North America including Canada. Milpitas has provided service and technical support to North America and Canada from California.

21. The Milpitas California facility would provide technical training and support for Nuclear Medicine equipment requiring employees from Philips Electronics Limited in Canada to be trained at their facility. Clinical Specialists and salespeople from Canada would regularly visit the facility for technical training including Manon Courville, Bob Johnson, Sandy Marrero, Tony Steele, and Stephen Smith. This training in California would directly and indirectly support Canadian employees selling Nuclear Medicine business and sales in Canada. Canadian employees came to California doing business to support Canadian sales.

22. Philips Electronics Limited salespeople and specialists would bring Canadian Medical customers and Canadian doctors to the Milpitas California facility for site visits and tours of the manufacturing facility. This would directly and indirectly result in business for Canada from the business they were doing in California.

23. Philips Electronics Limited does business in California. Their employees travel to California regularly with and without customers to do site visits at California hospitals like Stanford, UCLA, Cedar Sinai, and UCSF. While employed, my employees from Philips Electronics Limited including minimally Rick Metcalfe, Robert Albanese, Neil Campbell and Ken Mattie visited various California hospitals with customers and doctors for California site visits. This activity in and business with California and California hospitals directly resulted in sales and revenue for Canada from California.

24. Iain Burns as the President of Canada and Steve Hurwitz as the VP of Human Resources had direct responsibility and oversight for the Canadian employees and P&L, in so doing, they did business in California. The Medical cost center for costs and expenses was part of the P&L for Philips Electronics Limited. That

29. My Offer Letter was from Philips Medical Systems North America affiliated with Philips Electronics North America and in part negotiated with Randy Rountree, Iain Burns and Steve Hurwitz. My Offer Letter of employment stated I would get a copy of my compensation plan. Despite repeated requests prior and after my employment to the above individuals, I never got a copy of my compensation plan. The only statement that I received was around September of 2003. The Plan was a U.S. Plan and was tied predominately to U.S. metrics. This was not agreed to. It was not customized to Canadian performance measures. This limited my overall compensation since my team's Canadian performance was much stronger than the U.S. The potential variable compensation for me was not 40% in 2003 or 2004 as expressly stated in my Offer Letter. Philips Electronics North America, Philips Electronics Limited, Randy Rountree, Iain Burns and Steve Hurwitz are responsible for breaching this part of my agreement.

30. There was also an agreement in my Offer Letter stating I'd get an 8% annual increase. I never got this. Philips Electronics North America, Philips Electronics Limited, Randy Rountree, Iain Burns and Steve Hurwitz are responsible for breaching this part of my agreement.

31. Philips Electronic North America, Steve Hurwitz, Iain Burns and Randy Rountree refused to accept my original Offer Letter even after it was signed. They wanted to make changes to the options section. They required me to sign a new one with a reduced option clause. This was a breach of a contract that was already signed and agreed to.

32. Another paragraph in my Offer Letter also claims my "performance will be evaluated" with in the first six months. That did not happen and minimally the defendants breached this portion of my agreement. I did not get a formal evaluation until the end of February 2004.

33. My Offer Letter also states, "You are entitled to any GM vehicle with a capital cost of $33,700", per the company car policy. Despite repeated requests, I never received a vehicle policy for the U.S. or Canadian. I was provided a two-year-old used GMC Yukon with about 50,000 km and never given an option for anything else as required in my offer letter. This was a breach by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

34. My August 2003 American Express bill was over $15,000 of legitimate business expenses that the Defendants still has not reimbursed me for. These were legitimate business expenses that Philips Electronics, Philips Electronics North America, Stefan Rottke, Iain Burns, Randy Rountree and Steve Hurwitz refused to pay. They are required by corporate policy to pay these expenses and there is historical precedence for them paying these types of expenses.

35. **A. SUMMARY INFORMATION ABOUT BASIS OF THE CASE**

36. **(1) I filed the employment discrimination case in the court against the above named defendant on April 25, 2007.**

37. (2) I filed this case because the defendant harmed me by:
38. Firing me
39. Disciplining me without reason
40. Harassing me (or allowing others to harass me) so that working conditions became intolerable.
41. Other Actions (specify):  See below Demand Statement
42. Taking actions/retaliating against me because I complained about any of the above harms

43. (3) For each item circled in question #2, above, give one example of when and how the defendant took an action that harmed me:
44. Firing me:
45. My damages are for how I was degraded by the way Philips Electronics Limited, Iain Burns, Steve Hurwitz, Mark Krajicek and Monique Grey publicly orchestrated my suspension and departure from their office on or about July 14, 2004, in the middle of the day and in full view of my team.  Philips Electronics North America, Randy Rountree and Randy Dobbs allowed this breach of my employment even though I was not directly employed by Philips Electronics Limited.  Given my public humiliation, even if my suspension had not led to my termination, I would not have had an ability to return, lead and get the respect of my team.  It has also limited my ability to get future employment opportunities due to an inability to get referrals or recommendations from Defendant's personnel based on their perception of the awkward departure that the Defendants administered and rumors that developed.  Additionally, a number of recruiters ended my candidacy for employment with other companies based on incorrect information they heard including Korn-Ferry, one of the world's largest executive recruiters.

46. I was totally unprepared for any questioning especially the lengthy detailed interrogation Iain Burns, Mark Krajicek, Steve Hurwitz and Philips Electronics Limited put me through.  I had no warning, preparation, records, reports, files, calendar, computer etc. to refer to.  Given the formality of the meeting, I sensed a need for and requested legal council that was declined by those in the meeting.  While I was in the meeting and prior to any decision, my personal belongings were frantically removed from my office in the middle of the day and in plain site of many employees by Monique Gray, Human Resources Manager.  My actual termination did not happen until over a week later but on that day, before the meeting attendees made any decision on my continued employment, they immediately escorted me out of the building in plain view of many employees.  This created a "buzz" making many people aware and concerned about what was happening.  Many of them were lining the halls and looking out the windows upon my departure.  My credit cards, travel privileges, phone card, medical insurance etc were all turned off even though I was still employed.  This made it virtually impossible for Philips to continue my employment, even if they chose to.  My damages are for the humiliation, inability to get referrals despite strong performance and damage in the executive recruiter community.  There was no need for the meeting attendees to do this that way.  Despite leading my business unit to its best recognition and performance, the political and personal issues were discriminatory and intolerable.  This made it virtually impossible for Philips to continue my employment, even if they chose to.  My damages are for the humiliation, inability to get referrals despite strong performance and damage

in the executive recruiter community. There was no need for them to do this that way. This was a breach by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

47. I was hired by Philips Electronics North America and put into a no win situation in Canada. As an American, I ran the Canadian business unit but reported to a Sr. VP and organization in the U.S. My manager, Randy Rountree, wanted an American to run Canada because he was unhappy with prior Canadian managers. The Canadians wanted a Canadian running the business. Iain Burns, President Canada, wanted to have Medical as part of his direct oversight since that would double his responsibilities. The Defendant's harmed me largely or in part due to my not being from Canada or of Canadian origin.

48. **Disciplining me without reason:**
49. I had numerous meetings with Steve Hurwitz, VP Human Resources and Iain Burns, President of Canada (excluding the Medical business). This was due to personnel problems between Stefan Rottke, the Director of Finance and I. Mr. Rottke had personal issues with me that I was unable to understand. Mr. Burns seemed to feel that Stefan was simply jealous of my recognition for the performance of Canada.
50. Mr. Burns would make regular reports to Randy Rountree, VP Sales and Marketing for North America, my boss in Bothell WA. My boss reported to Randy Dobbs who was the CEO for Philips Medical Systems North America. Mr. Burns was trying to position himself to oversee the Medical business in Canada. Mr. Burns reported to Jon Hommond who was an executive running the Consumer Products Division based out of either Atlanta or New York.
51. Mr. Rountree, questioned me both in writing and verbally about accusations that were coming directly from Mr. Rottke and Mr. Burns. This resulted in some comments on my performance appraisal that I disputed both verbally and in writing directly with Mr. Rountree and indirectly with Mr. Burns due to their inaccuracy. According to company policy, my concerns should have been addressed.
52. I have received communications regarding my 2003 Performance Appraisal. My boss, Mr. Rountree's, compensation was tied to getting this signed by February 27th, 2004. From Iain's inputs, my boss made changes to the review he had originally reviewed with me the prior week. I did not agree with the changes but he required me to sign it with in a few hours of receiving it. The tone of the changes he added included inputs from Iain and Stefan. The Appraisal System wasn't working properly to allow for me to provide my comments on line as it was supposed to do so I did so manually via e-mail and phone calls on February 24th and 27th. My boss did not respond to the comments I sent. In my comments, I highlighted some of my frustrations in dealing with the politics and lack of direction from headquarters and Canada. This was a breach by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.
53. I never received Goals and Objectives from my boss, Mr. Rountree. These were provided by him to my U.S. peers and should have been provided to me as well. This was required by Philips company policy. I took the initiative to write my own aggressive Goals and Objectives plan which my boss evaluated me on. I should

not have had to take the initiative to do this but I received limited direction due to being involved with Canada. This was a breach by the defendants including Philips Electronics North America and Philips Electronics Limited.

54. Prior to my hiring, Rick Metcalfe, an acting Regional Manager, he was in sales and one of Canada's best salespeople. He was also supposedly in line to take my position and was very unhappy and unsupportive with me in my new role. The other manager was Robert Albanese which Mr. Burns wanted me to immediately terminate. I wanted to take time to evaluate both Mr. Metcalfe and Albanese before taking any actions. Mr. Burns was not happy with my continuing Mr. Albanese's employment during this evaluation. He would constantly harass me about not firing Albanese. Mr. Metcalfe would go around me directly to Mr. Burns and complain about numerous issues like his salary, position etc. Iain would consistently listen to Rick's complaining. Despite my objections, this impacted the authority of my role. Iain would have numerous discussions with me regarding what I was doing wrong with Rick and how I should support him. This impacted Mr. Burn's evaluations of me and communications to my manager. This discrimination and non support of my role should not have been allowed by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

55. **Harassing me (or allowing others to harass me) so that working conditions became intolerable:**
56. Stefan Rottke, Director of Finance, had major issues with me. In part, it may have been due to my lack of being required to relocate to Canada by my manager as he was required to do from Germany. Mr. Rottke was not my manager, he was not part of my business unit, he did not report to my manager and he was in fact my subordinate. Stefan reported directly to Mr. Burns. Despite this, he would constantly scrutinize my expenses and question everything. He would hold up payment of all of my expenses based on a single item. This would go on for weeks. I addressed this both verbally and in writing via e-mail records with Steve Hurwitz-VP Human Resources, Monique Grey, HR Manager, Mark Krajicek, General Council, Ron Robey, VP Service, Iain Burns, President and Randy Rountree, my boss, numerous times. Despite my continued complaints and concerns, nothing was done. Stefan's review and approval of my expenses was against company policy since it was not "one over one approval". Mr. Burns and Hurwitz, Philips Electronics Limited and Philips Electronics North America are directly responsible for allowing this to continue.
57. At one point when I questioned Mr. Rottke about interviewing a waiting sales candidate he had agreed to meet, he threw a pen at me, almost hitting me in the eye. He than slammed is fists on the desk and stormed out of the room leaving the candidate waiting in the lobby. This all took place right in front of the Human Resources Manager, Monique Grey. Again, despite complaining to Mr. Burns, Mr. Rountree and Mr. Hurwitz and even with Mrs. Grey as a witness, nothing was done. I also tried to file a formal complaint which was brushed off by Mr. Burns and Hurwitz. This is unacceptable, threatening behavior and against company policy which was a allowed to continue by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

58. Despite being the VP for Sales and Marketing with solid support and performance, I received constant public harassment and derogatory comments from Mr. Rottke. In addition to the "pen" incident, his destructive interaction with me was well known by other employees and perceived negatively. It dramatically impacted my ability to be successful in my role.
59. Mr. Rottke would consistently leave my expense reports out on his desk for others including my employees to see. He would get great joy out of telling my employees about how he was not going to pay certain items or approve the expenses. All of my managers experienced this. I have copies of e-mails complaining about some of this abuse. At one point, I tried to file a formal grievance against Mr. Rottke to Hurwitz and Burns. It was ignored. People can testify to that. This is unacceptable, threatening behavior and against company confidentiality policy which was a allowed to continue by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

60. My expenses were a huge issue from the start of my employment with Mr. Rottke and later Mr. Burns probably due to discriminatory practices to try to pressure me to relocate to Canada. Despite being senior to Stefan, Iain directed Stefan to approve all my expenses. This is actually against Philips corporate policy since "one over one" reviews are required for everything including approving expenses. My boss approved all my peers' expenses directly which was discriminatory to me.
61. Randy Rountree, my boss, did not require me to not relocate to Canada. He never said either verbally or in writing that my expenses in Canada would not be paid. This would include paying for parking, meals, laundry, etc. There was a trade off between an expensive relocation and my traveling expenses. Stefan on the other hand, wanted to limit what expenses I was being reimbursed for.
62. The Canadian management never questioned anyone like they did me regarding travels and expenses. Stefan never reviewed the other employees expenses with the same level of detail they would review mine. This was discriminatory given my U.S. status.
63. Sushila Jina, the expense input manager, came to me on a number of occasions complaining that Mr. Rottke would constantly question her and not approve my expenses. This was very inconsistent compared with other Canadian employees having similar expense items. Stefan reviewed and questioned most every expense report I had and virtually none for others.
64. My RSNA trade show expense report for around $5000 from November of 2003 was held up for about five months over a $75 deposit issue. Stefan just didn't approve it. He didn't let me know it wasn't approved and just didn't pay it. He also let me know the reason why which had to do with a deposit the company made months ago to confirm the room. My Canadian counterpart, Carl DeCoste, VP Service and most of my Canadian employees had the same expense item on their expense reports yet their expense reports were processed and paid within weeks. This was discriminatory against me allowed by the defendants.
65. In 2003 alone, there were minimally 40 items totaling about $5000 of unpaid expenses he just chose not to pay. Stefan did not communicate the items that were in question to me. Around April of 2004, I found out Stefan held up for weeks and in some cases months around 15 expense reports totaling $27,000. He wouldn't pay a $300 parking fee finally telling me I should have parked in long term parking. Stefan was neither my boss nor my superior to be allowed to make

those decisions yet this was allowed to continue by Mr. Burns despite my ongoing concerns being expressed.
66. Due to Stefan's lack of making me aware of his questions and not paying my expenses, I had no funds in my account to pay my bills including American Express, Verizon, Astound etc, in a timely manner. I received $700 in late fees, which affected my personal credit history. I got very rare documentation as to why, when or what an item was that was in question. Mr. Burns encouraged this discriminatory behavior against me as an American.
67. This was extremely frustrating. I complained to Iain regularly on this since Stefan took direction from him and I believe I have some e-mails to confirm it. Mr. Burns was aware of all of this but let it continue. He did not take decisive action as the senior Canadian official to resolve it. Yet for Canadian employees he was generally very supportive to resolve issues in their favor. Also, "one over one approval" was required by company policy. This is unacceptable harassment behavior and against company policy which was a allowed to continue by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

68. Iain became very obsessed with what, if anything was going on with my admin and me around March 2004. At one point he actually hired a Private Detective to track us and our activities. They took pictures and recordings as well as reports on my activities and whereabouts.
69. Iain kept harassing my admin and me and constantly questioning others regarding the interaction between us. Iain had independent meetings with us verbally saying to my admin and me that there is a company policy to make Philips aware of personal interaction and that it was against company policy. There was no written or verbal company policy regarding this.
70. Iain didn't spend time discussing business issues but instead seemed to love discussing personal dirt. He said he was hearing rumors about my admin and me. He said there was nothing wrong with that but it could be "perceived incorrectly and needed to be handled properly". He mentioned people talked about innocent things like us leaving the building at around the same time or her dropping me off at the airport. He had a number of joint and independent meetings with both my admin and I to discuss this perception. He wouldn't let it go. I told him openly about business travel my admin had done with our team, dinners, lunches etc. He even discussed options regarding her position. Iain discussed moving her to a different admin role, getting her training for a Sales role or encouraging her to get a role outside of Philips to avoid perception questions. Ultimately, he recommended that she stay in her current role and we avoid anything visual that could lead to negative perceptions. As the senior Executive in Canada, Iain had "informants" who kept him updated and he must take responsibility for letting it get to the point it did. This was discriminatory to me and against company policy which was an allowed to continue by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

71. It should be noted that Iain was the only person in my interview process who openly fought Philips' hiring me in part because I wasn't Canadian. For political reasons, Iain wanted me to report directly to him in Canada and not Randy Rountree at our Bothell, WA headquarters. If Iain could run the medical

business, he would more than double his responsibilities giving him more prestige and power. He was the only dissenter in the interview process.

72. There was also another employee Rick Metcalf who became my Western Regional Manager. Rick felt he should have had my position. He was the top salesperson so tended to expect and get a lot of special treatment especially from Iain. He worked for me but would go directly around me to Iain regarding issues related to his salary, compensation and complained about the Acting Manager role I put him in. This skirted my authority and this was supported and encouraged by Burns.

73. **Other Actions (specify): See below Demand Statement:**

74. **Taking actions/retaliating against me because I complained about any of the above harms:**
75. Mr. Burns actually hired a private detective to track my movements and my admin's. This was due to them trying to confirm that I was having a relationship with another employee. This information was used in my suspension and termination proceedings.

76. In April, I got and e-mail and call from my boss regarding a potential promotion for one of the top 5 field jobs in North America, the VP for Services in the Northeast Zone. Randy Dobbs, North American CEO, my boss's boss was aggressively recruiting me for the role. Out of respect, I mentioned to Mr. Burns that I was being considered for this role. Separately, Mr. Rottke was also interviewing that week in Bothell for a new role, largely because of his inability to productively work with me. For some unknown reason, suddenly all communications on the role stopped from my boss and he didn't take my calls or discuss it with me. They ended up putting a previous VP of Service back in the role that had been demoted. Some comments from Burns or Rottke must have influenced their decision to not move forward with my candidacy. There are some e-mails that confirm these concerns to my boss. My concerns should have been addressed by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

77. Separate and prior to my Performance Review, my boss did write a very positive review of my performance for the IMDR Succession Planning Process, identifying me as a high potential employee.

78. Just prior to my termination, all my direct reports were told either directly or in a group setting by Iain Burns that they are not to have any personnel or business contact with me. If they were caught talking with me for any reason, Iain told them they would be fired from Philips.

79. **(4) The defendant took action that harmed me, as I identified in question #2 above; the defendant did so because of:**
80. **National Origin**
81. **My Age**

82. **(5) Give an example of how a harm that you suffered, as you indicated in question #2, is related to any discriminatory reason that you marked in question #4. Do this for each item you mark in questions #2 and #4.**
83. I was also one of the younger managers in our history and had many direct reports younger or older than me. At least one of the direct reports, Rick Metcalf, Western Region Manager, felt he was in direct line for my role and he was very unhappy and unsupportive of me and my role. He would go around me directly to Mr. Burns regarding issues and concerns. He would also inform Iain regarding all my activities.

84. In many cases, when Canadian people complained about our new compensation plan, we would continue to pay them on their old variable compensation plans because they refused to sign their new ones. Philips Electronics Limited, Burns and Hurwitz were very sensitive to anything that could lead a Canadian employee to complain about "constructive dismissal". Yet the defendants did not address my concerns.

85. My disability claim should have been covered by Philips medical insurance but Philips immediately terminated my medical insurance on or about July 16th, well before my termination was even official. On July 20, 2004 a letter from my doctor putting me on stress disability for 6 weeks was faxed to Christine Pitt in Philips Human Resources and ignored. This was also addressed by my Council during the July 28th, 2004 meeting with Philips management. Despite that I was still employed at that time, they chose to ignore that. I paid out of pocket expenses for doctors, pharmacy and drugs including sleeping pills, anti-depressants and stomach ailments totaling over $1000. The second letter of disability from my Dr. putting me on disability for 5 weeks on August 27th, 2004 was also ignored. The defendants especially Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz had a fiduciary responsibility to support and provide a written status of that claim as they had done for other Canadian employees.
86. These actions regarding my disability situation were inconsistent and discriminatory with other Canadian employee's claims. For example, in November 2003, a day or two before we were going to terminate Lee Johnstone, an Account Manager, she went on disability. Christine Pitt, a Human Resources representative told me that she was "untouchable" and that we could do nothing but wait for her doctors to do more tests. My admin was even given disability and not terminated. That is not how the defendants including Philips Electronics Limited, Hurwitz and Iain Burns dealt with me and they are responsible for this discrimination.
87. I had four other Canadian employees have similar disability issues including Ginette Moreau, Real Noiseux and Lorea Farrell. They were treated the same as other Canadian employees and discriminatory to me.

88. My Offer Letter was from Philips Medical Systems North America affiliated with Philips Electronics North America and in part negotiated with Randy Rountree, Iain Burns and Steve Hurwitz. My Offer Letter of employment stated I would get a copy of my compensation plan. Despite repeated requests prior and after by employment to the above individuals, I never got a copy of my compensation plan. The only statement that I received was around September of 2003. The Plan was a U.S. Plan and was tied predominately to U.S. metrics. This was not

agreed to. It was not customized to Canadian performance measures. This limited my overall compensation since my team's Canadian performance was much stronger than the U.S. I don't think the potential variable compensation for me was ever 40% in 2003 or 2004 as expressly stated in my Offer Letter. This was a breach of my agreement which should not have been allowed to continue by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

89. There was also a paragraph in my Offer Letter stating I'd get an 8% annual increase. I never got this. Philips Electronics North America, Philips Electronics Limited, Randy Rountree, Iain Burns and Steve Hurwitz are responsible for breaching this part of my agreement.

90. Philips Electronic North America, Steve Hurwitz, Iain Burns and Randy Rountree refused to accept my original Offer Letter even after it was signed. They wanted to make changes to the options section. They required me to sign a new one with a reduced option clause.

91. Another paragraph in my Offer Letter also claims my "performance will be evaluated" with in the first six months. That did not happen and minimally Randy Rountree breached this portion of my agreement. I did not get a formal evaluation until the end of February 2004.

92. My Offer Letter also states, "You are entitled to any GM vehicle with a capital cost of $33,700", per the company car policy. Despite repeated requests, I never received a vehicle policy for the U.S. or Canadian. I was provided a two-year-old used GMC Yukon with about 50,000 km and never given an option for anything else as required in my offer letter. This was a breach by Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

93. My August 2003 American Express bill was over $15,000 of legitimate business expenses that Philips Electronics Limited still has not reimbursed me for. This was threatening behavior and against company policy which should not had been allowed to continue by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

94. Just prior to my arrival Philips Electronics Limited had a major "conspiracy" involving hundreds of thousands of dollars of supposed money laundering on used Ultrasound equipment being sold to dealers in the United States. Iain led the investigation and was very involved with it. I don't believe anyone was terminated for cause or not offered a severance plan as they did to me. This was again discriminatory against me.

95. There were known relationships in Philips Electronics Limited that Burns and Hurwitz were aware of with very different results to their oversight of me. Most recently, Victor Davis and Lisa Neff-McDonald were both employees and married to other people while having a relationship. Lisa was Victor's clinical applications person or his subordinate. They carried on a relationship for a few years and she even got pregnant before they got married. Nobody in Canada seemed to care; research or investigate this relationship or the expenses tied to it as they did me.

This was due to direction from Iain Burns who encouraged and supported discrimination against me.

### 96. B. REASONS FOR SEEKING AN ASSISTED SETTLEMENT CONFERENCE

**97. (6) Have you read the material on ADR and on the Assisted Settlement conference provided by the Clerk, when you filed the case, or by the court?**
98. Yes

**99. (7) I am seeking an assisted settlement conference because I hope the process will (circle applicable).**
100.   All items a ... m.

### 101.   C. WHY I NEED AN ATTORNEY TO ASSIST ME IN THIS SETTLEMENT CONFERENCE

**102.   (8) Have you been unable to find an attorney willing to represent you in this case on terms you can afford?**
103.   Yes

**104.   (9) I have made a reasonable effort to obtain an attorney to represent me and contacted the following attorneys for this purpose:**
105.   Eric Kay, Aylesworth Thompson Phelan O'Brien LLP, 222 Bay Street, Toronto, Canada M5K1H1, 416-777-0101.
106.   Tod Ratfield, 1233 Alpine Rd., Walnut Creek, CA 94596, 925-934-3300
107.   John Prentice, 1225 Alpine Rd., Ste 204, Walnut Creek, CA 94596, 925-256-9198.

108.   I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Sign and Date.

109.   **IV. LIST OF DAMAGES:**
110.   **Hours x # of Computer Files: $208,000.** (2000 hours of work x approximate 2000 files. I had 12 years and over 2000 personal files with a very conservative average of one hour of work invested in each of them at $104/hour. This hourly rate is calculated based on my annual pay at Philips with a 20% variable). After repeated written and verbal requests, Philips Electronics, Iain Burns and Steve Hurwitz finally sent me a paper directory list of my computer files over two months after my departure. I identified the personal files and requested their return. They have still not all been returned. The reason my files were on the company computer and their H Drive is because upon my initial employment, it took the Defendants over a month and a half to get me a company computer and put me on their e-mail system. During that time, in order to perform my duties, I was required to use my personal computer. When my company computer finally arrived, Philips IT personnel knowingly supported and loaded all my personal computer files from my personal computer to the

company computer. This happened on a regular basis since I worked from both home and Canada. I used many of my personal files for the benefit of Philips including establishing a number of their processes that are still in use by them today. Around March of 2003, Philips IT personnel decided to trade out my computer hardware and back up all computer files on their company H Drive including my personal files. This was completely unannounced to me and happened while I was at a meeting and my computer was left in my office. They were supposed to provide me with back up disks but despite repeated requests, never did. The Philips IT team supported my personal files and loaded them on the new computer and backed them up on the H Drive.

111. My damages are against Philips Electronics Limited, Iain Burns Steve Hurwitz and the other defendant for the non-return of all of my personal files, which I have identified and requested from the defendants numerous times.

112. **Non-reimbursed of Travel Expenses: $15,000.** (American Express bill for outstanding expenses still not reimbursed). These were legitimate travel expenses for various activities that were submitted and not reimbursed. Philips Electronics, Iain Burns, Steve Hurwitz and Philips Electronics North America have refused to pay them. Based on California Labor law there may also be a penalty for non payment added to this amount.

113. **Wrongful termination and Unemployment: $187,500.** (9 months of time unemployed searching for new work). Since I worked for the American company Philips Electronics North America, my termination by Philips Electronics Limited was a wrongful termination. My Offer Letter of Employment was by Philips Medical Systems North America but my termination letter was from Philips Electronics Limited who terminated my employment. They had no right or jurisdiction to do this since I was not employed by them. This was tort interference by the Canadian company and interference with my contractual Offer Letter from Philips Medical Systems North America.

114. Philips Medical System North America and Philips Electronics North America are directly at fault for letting my termination by Philips Electronics Limited proceed without interference by them. That was a breach of my Offer Letter agreement for employment. The individuals that were directly responsible for this were defendants and likely witnesses, Randy Rountree, Iain Burns, Steve Hurwitz, Stefan Rottke and Randy Dobbs.

115. My damages are for how I was degraded by the way Philips Electronics Limited, Iain Burns, Steve Hurwitz, Mark Krajicek and Monique Grey publicly orchestrated my suspension and departure from their office on or about July 14, 2004, in the middle of the day and in full view of my team. Philips Electronics North America, Randy Rountree and Randy Dobbs allowed this breach of my employment even though I was not directly employed by Philips Electronics Limited. Given my public humiliation, even if my suspension had not led to my termination, I would not have had an ability to return, lead and get the respect of my team. It has also limited my ability to get future employment opportunities due to an inability to get referrals or recommendations from Defendant's personnel based on their perception of the awkward departure that the Defendants administered and rumors that developed. Additionally, a number of recruiters ended my candidacy for employment with other companies based on

incorrect information they heard including Korn-Ferry, one of the world's largest executive recruiters.

116. **Fighting Collection Agency: $9360.** (30 hours to fight the collection dispute over the expenses Philips would not pay and double that to repair my credit and reputation). I had $15,000 in non-reimbursed travel expenses by Philips on my Corporate American Express Card. The defendant would not pay them even though they were legitimate business expenses. Expense reports were submitted for reimbursement for most of this but Philips Electronics Limited has kept the reports and files and refused to provide copies largely with Burns direction.

117. American Express turned the issue over to a number of collection agencies that have continued to harass, threaten and attack my personal credit since my departure. I was continuously contacted by Contact Resource Services, Barrister and Solicitor, Total Credit Recovery and Allied International to name a few. I was denied credit on a few occasions including by Discover and Bank One due to "bad debt collections" as reported by Experian. My credit historically has been stellar. My damages are against all the defendants for the expenses and time to correct the collection agencies attacking my personal credit history and reputation regarding outstanding expenses that were Philips business related expenses. This nonpayment was against company policy which was allowed to continue by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

118.

119. **Airline flight: $200.** (Flight from Hartford back to San Francisco). My family was visiting in Hartford, CT when I was put on suspension but I live in Walnut Creek, CA. Steve Hurwitz and Iain Burns made me leave the country immediately and only provided a ticket to Hartford. My damages are for the flight back to my home base city of Walnut Creek, CA. This was paid every week prior to that. Philips Electronics Limited has responsibility to pay this bill.

120. **Poorly handled, inappropriate departure from the office: $54,000.** (4 months of lost wages). My damages are against the defendants especially Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz for how I was degraded by the way they publicly orchestrated my suspension and departure from their office on or about July 14, 2004, in the middle of the day and in full view of my team. Given my public humiliation, even if my suspension had not led to my termination, I would not have had an ability to return, lead and get the respect of my team. It has also limited my ability to get future employment opportunities due to an inability to get referrals or recommendations from Philips personnel based on their perception of the awkward departure that Philips administered and rumors that developed. Additionally, a number of recruiters ended my candidacy for employment with other companies based on incorrect information they heard including Korn-Ferry, one of the world's largest executive recruiters.

121. I was totally unprepared for any questioning especially the lengthy detailed interrogation they put me through. I had no preparation, records, reports, files, calendar, computer etc. to refer to. Given the formality of the

meeting, I sensed a need for and requested legal council that was declined. While I was in the meeting and prior to any decision, my personal belongings were frantically removed from my office in the middle of the day and in plain site of many employees by Monique Gray-Human Resources Manager. My actual termination did not happen until over a week later but on that day, before Philips made any decision on my continued employment, they immediately escorted me out of the building in plain view of many employees. This created a "buzz" making many people aware and concerned about what was happening. Many of them were lining the halls and looking out the windows upon my departure. This made it virtually impossible for Philips to continue my employment, even if they chose to. My damages are against the defendants especially Philips Electronics North America, Philips Electronics Limited, Steve Hurwitz and Iain Burns for the humiliation and inability to get referrals despite strong performance and damage in the executive recruiter community. The defendants orchestrated the activities around my departure and are responsible for it.

122.    **Medical – Disability and Pain and Suffering: $69,500.** (My damages are against the Defendants especially Philips Electronics Limited, Philips Electronics North America, Iain Burns and Steve Hurwitz for 11 weeks of pay during my disability including the $1000 in pharmacy and doctor fees and an additional 50% for the pain and suffering effects on my health and impact to my family). They supported and allowed this discrimination to happen. This should have been covered by my company medical insurance but it was immediately terminated on or about July 16th well before my termination was even official. On July 20, 2004 a letter from my doctor putting me on stress disability for 6 weeks was faxed to Christine Pitt in Philips HR and ignored. This was also addressed by my Council during the July 28th meeting with Philips. Despite that I was still employed at that time, they chose to ignore this. I paid out of pocket expenses for doctors, pharmacy and drugs including sleeping pills, anti-depressants and stomach ailments totaling over $1000. The second letter of disability from my Dr. putting me on disability for 5 weeks on August 27th was also ignored. Other employees with a doctor's disability letter were provided disability pay and benefits including Lee Johnstone. . This was discriminatory and against company policy which was allowed to continue by the defendants including Philips Electronics North America, Philips Electronics Limited, Iain Burns and Steve Hurwitz.

123.    **Prepare and defend my request for Unemployment Insurance: $3120.** ($104/hour x 30 hours). I attended a number of meetings with California Unemployment as well as conference calls and had to prepare paperwork to defend the case. The Defendants especially Philips Electronics Limited, Philips Electronics North America, Iain Burns and Steve Hurwitz gave direction to appeal this but eventually the case was dismissed. My damages are for Philips Electronic Limited to pay for my costs associated with defending my claim for Unemployment Insurance benefits.

124.    **Attorney fees: $4850.** (My actual attorney's fees $3250 and my time to prepare everything). Some of my Council's activity is listed below to get my personal belongings and computer files back. My damages are for the defendants especially Philips Electronics Limited, Philips Electronics North

America, Iain Burns and Steve Hurwitz to pay my legal fees and reimburse me for my time to prepare them.

125.    **Palm Pilot Contact/Address info: $5000**. (A conservative value of $100 for what each contact was worth x the estimated number of contacts). The Outlook Contacts in the computer files had a listing of all my contact information for the prior 12 years. My damages the Defendants especially Philips Electronics Limited, Philips Electronics North America, Iain Burns and Steve Hurwitz are to get those contacts names, addresses, phones numbers etc. back.

126.    **E-mail information: $3000**. ($104/hour x hours). E-mail communications on personnel issues in my personal Outlook files on the computer.

127.    **CardScan reader for my Palm: $500**. (Actual cost). Was being used by the VP of Service and never returned.

128.    **Time to mark off personal files: $416**. ($104/hour x 4 hours). Files that I identified to Philips as personal and needing to be returned.

129.    **Total of clothing items never returned: $4640** (in my office, truck and hotel which I was not allowed to be returned by the Defendants especially Philips Electronics Limited, Philips Electronics North America, Iain Burns and Steve Hurwitz):
130.    Canali Suite: $1500
131.    Canali Shirts: two at $180/shirt = $360
132.    Two Sweaters: $300
133.    Canali Overcoat: $1500
134.    Dress Shoes: two pairs at $190/pair = $380
135.    Leather jacket: $600. They never confirmed what they still had in Canada and I assumed my leather jacket was lost so I bought a new one. It took Philips over three and a half months to return some of my personal belongings. Due to my travel schedule, I kept a substantial amount of clothing in the Toronto office. All items should have been returned in an expedition manner, as stated by Philips in their Termination Letter, of days or at the very most a week or two. Some of my clothing was removed from my office during my questioning and prior to completion of my suspension at the direction of the Defendants especially Philips Electronics Limited, Philips Electronics North America, Iain Burns and Steve Hurwitz by Monique Grey.

**136.    Total damages of: $565,086**

137.    Sincerely,

138.    Lou Ramondetta